MACKEY, Appellant, vs. COLE, Respondent.

*March 20 — April 9, 1891.*

*Chattel mortgage: Notice.*

The record of the filing of a chattel mortgage executed by the owner of the property, but under an assumed or fictitious name, is not notice of such mortgage to a *bona fide* purchaser of the property from such owner, selling under his true name.

APPEAL from the Circuit Court for *Ashland* County.

The facts of the case are fully stated in the opinion. The plaintiff appeals from a judgment for defendant.

For the appellant there was a brief by *Lamoreux, Gleason, Shea & Wright,* and oral argument by *E. F. Gleason.* They argued that a mortgagee had a right to assume the honesty of the mortgagor, and was not bound to ascertain the true name of the latter, under peril of losing his security. *Alexander v. Graves,* 25 Neb. 454. The rule of *caveat emptor* applies.

For the respondent there was a brief by *Tomkins, Merrill & Smith,* and oral argument by *W. M. Tomkins.*

COLE, C. J. This is an action of replevin to obtain possession of a span of horses. The plaintiff claims the horses by virtue of a chattel mortgage given to him in Minneapolis by one McPherson, December 16, 1889. McPherson was the owner of the horses, but executed the mortgage on them in the name of John Doyle, who had no interest in them. The business for the plaintiff was transacted at Minneapolis by an agent, who did not know McPherson when he applied to him for the loan of $210, which amount the agent had in his hands to loan for the plaintiff. When McPherson applied for the loan he gave his name as John Doyle, stated the street and number where he lived, and also gave the name of a company that he had worked for

several years. The agent made inquiries about Doyle of those who had employed him; went to the residence, where he found McPherson, who had assumed the name of Doyle in order to carry out his fraudulent purpose; and the agent, becoming satisfied that Doyle was a reliable man, and supposing he was dealing with him, made the loan and took the mortgage. So far as the agent was concerned, there does not seem to be anything in the transaction which should have made him suspect from the inquiries made that McPherson was not the man he represented himself to be. He therefore received the chattel mortgage, placed it on file in the proper office, and advanced the $210 on the mortgaged property. It was provided in the mortgage that the mortgagor might retain possession of the property until default in payment or breach of condition in the mortgage, but, if any attempt was made by the mortgagor to dispose of the property or remove it, the mortgagee was authorized to take possession of it, and sell it under the mortgage. About ten days after the mortgage was given, McPherson took the horses in controversy to Ashland, in this state, and sold them to the defendant, who, it is admitted, was a *bona fide* purchaser for value, with no notice of any lien on the property other than would be implied from the filing of the mortgage in the city clerk's office in Minneapolis. So the question presented is, Which of two innocent persons must suffer from the fraud of McPherson,— the mortgagee or the purchaser? The learned circuit court ruled that the loss must fall upon the former, for the reason that neither he nor his agent had used due diligence to find out McPherson's name, and, if he had done so, he would have detected his fraud, while no degree of diligence would have enabled the purchaser to discover it.

It is not necessary, in the view we have taken of the case, either to affirm or disaffirm this view of the circuit court; for we do not see how the plaintiff can hold the property

Mackey vs. Cole.

upon the facts disclosed in the evidence. Now, assuming that the law of Minnesota in regard to filing chattel mortgages is the same as that of this state, as we must do, there being no proof to the contrary, suppose the defendant had purchased the horses of McPherson in Minneapolis, on what principle of law would he have been chargeable with notice that there was a mortgage upon them? If he had examined the record, he would have found no mortgage on file given by the real owner, McPherson, to the plaintiff. As between McPherson and the plaintiff, the mortgage would undoubtedly be valid, for the simple reason that McPherson would be estopped from saying that the name of Doyle, which he had assumed for the fraudulent purpose, was not his true name. But how could a purchaser from McPherson ascertain that there was a valid mortgage on the property? The record certainly would not show it, giving it all the effect it could have as notice. We are therefore utterly unable to perceive how filing a chattel mortgage purporting to have been given by John Doyle could affect a purchaser of the property from McPherson who had the possession and was the apparent owner. If the purchaser should by chance in his examination come across the mortgage on file executed in the name of John Doyle, there would be nothing in the description of the mortgaged property described as one chestnut horse, or one bay mare, of such an age and weight, as would aid to identify the property as that which he was about to purchase of McPherson, for there were many animals which would fully answer the description of the mortgage. So the record of the mortgage would give no information nor lead to any knowledge of the fact that a mortgage existed against the horses.

But, it is said, the rule of *caveat emptor* applies to the purchaser. But how the application of that rule aids the plaintiff's case is not obvious. Suppose the chattel mort-

gage, whether given in the right name or a fictitious name, had never been placed on file, would the rule that the buyer must beware, charge the purchaser with knowledge that a mortgage existed, or that McPherson's title was defective, and, if so, upon what principle of law would he be so chargeable with notice of the fact? For, as we have observed, the record fails to show that McPherson had given any mortgage on the horses. Then, how could the purchaser be charged with knowledge of the fact? We do not see how he could be.

This conclusion is in conflict with the decision in *Alexander v. Graves*, 25 Neb. 453, which seems to be the nearest in point of any cases we have found in our investigation. This case was referred to by counsel on the argument. The head-note states the decision fairly, as follows: " A. purchased certain personal property from B. on time, and, for the purpose of securing the purchase price, executed a chattel mortgage on the property purchased. The purchase was made and the chattel mortgage executed under an assumed and fictitious name. The parties to the transaction being unacquainted, the vendor supposed the name given was the true name of the purchaser. The purchaser stated that his residence was in Webster county, which was correct, and the mortgage was duly filed in the proper office in that county. Subsequent to the filing of the mortgage A. sold the property to C., under his true name, after C. had examined the records for chattel mortgages executed by A. and found none. In an action of replevin by B. against C. for the possession of the mortgaged property, it was held that B. should recover judgment." If we understand the principle of this decision, the court holds that the purchaser had constructive notice of the existence of the prior chattel mortgage from the record. But we are unable to perceive how that conclusion follows, and consequently, with the utmost respect for the learning and au-

thority of that court, we feel constrained to dissent from the decision there made.

It is certainly true, under our decisions, that a chattel mortgage passes the title of the property conditionally to the mortgagee, and, where the mortgaged property is retained by the mortgagor, the statute makes the filing of the mortgage in the proper office equivalent to an actual change of possession. Sec. 2314, R. S. But this provision of law goes upon the assumption that the instrument is executed by a party who has an interest in the property which could be mortgaged. We cannot see how it can in reason apply to a mortgage executed under an assumed or fictitious name, so far as third persons are concerned. A mortgage is not effectually recorded where the instrument is executed under a fictitious or false name. This proposition seems too plain for argument. So we must hold that, if the defendant had purchased the horses of McPherson in Minneapolis, there was nothing on record to charge him with notice of plaintiff's mortgage; *a fortiori* nothing to charge him with such notice at Ashland, in this state.

This view disposes of the case, and renders it unnecessary to consider the other questions discussed on the argument.

*By the Court.*— The judgment of the circuit court is affirmed.