No. 19,538.

HERMAN F. WOGAN, *Appellee*, v. J. M. SIVEY et al. (THE CITIZENS NATIONAL BANK OF FORT SCOTT, *Appellant*, and ALFRED WELLS, Cross-petitioner, *Appellee*).

SYLLABUS BY THE COURT.

1. FRAUDULENT TRANSFER OF PROPERTY — *Chattel Mortgages Executed by Fraudulent Transferee—Subsequent Mortgage on Same Property by Actual Owner—Priority of Liens.* An owner of personal property represented that it had been transferred to another, and he with such other applied for a loan of money secured by a chattel mortgage executed by such vendee on the property represented to have been sold. It was not a *bona fide* sale of the property, but the owner not only represented to the mortgagee that it was an actual sale and aided in the obtaining of the loan upon the mortgage but he also endorsed the note which was secured by the mortgage. The property was sufficiently described in the mortgage, which was duly filed for record. *Held,* that the mortgage was valid not only as between the parties to its execution, but also as against a third party, who subsequently obtained a mortgage upon the same property executed by the owner.

2. TRIAL—*No Error Appears in the Record.* The instructions given by the court are deemed to be substantially correct, and the findings of the jury held to be sustained by the evidence.

Appeal from Bourbon district court; CHARLES E. HULETT, judge. Opinion filed June 12, 1915. Affirmed.

*John H. Crain,* and *John L. Connolly,* both of Fort Scott, for the appellant.

*A. M. Keene,* of Fort Scott, for appellee Herman F. Wogan.

*W. R. Biddle,* and *Harry Warren,* both of Fort Scott, for appellee Alfred Wells.

The opinion of the court was delivered by

JOHNSTON, C. J.: Herman F. Wogan brought this action against J. M. Sivey, C. A. Beck, The Citizens National Bank of Fort Scott, Kan., Anna Beck and

Michael Beck to recover the sum of $510 and to fore-
close a chattel mortgage on personal property described
in the mortgage.  Alfred Wells came in, by leave of
court, and by cross-petition sought to recover the value
of certain personalty covered by a mortgage held by
him.  It appears that C. A. Beck, owning certain per-
sonal property, represented to Wogan that he had sold
it to Sivey, and the latter not having sufficient money
to pay for the property, Beck procured Wogan to loan
Sivey $525.  Wogan made the loan and took Sivey's
note, dated March 22, 1912, due in sixty days, signed
by C. A. Beck as surety, and Sivey gave Wogan a
chattel mortgage on the property as security, signed by
himself alone.  This mortgage was recorded May 11,
1912.  On May 25, 1912, Sivey paid $15 on the note.
Much the same representations were made by Beck, it
appears, to procure one Benj. Files to loan $416.50
to Al Wells, since deceased, a son of defendant Alfred
Wells.  Beck signed the Wells note as surety, which
was dated December 20, 1911, due in sixty days, and
at the same time Wells gave Files a chattel mortgage
upon the property, which was recorded on Decem-
ber 21, 1911.  Wells paid Files part of the loan, and
later Files, apparently becoming alarmed and suspect-
ing what he called "crookedness," induced Alfred Wells,
the father, to pay $365, the amount then due on the
note, and assigned the note, security and all right he
had in the property covered by the mortgage.  On
June 26, 1912, C. A. Beck and Anna Beck, his sister,
gave their joint note, due in six months, to The Citizens
National Bank of Fort Scott for $2525.25, for money
borrowed from the bank by C. A. Beck, and to secure
payment of the note gave their chattel mortgage, which
covered all the property included in the Wogan and
Files mortgages and some additional property.  This
mortgage was recorded on June 26, 1912.  It appears
that practically all of the property covered by the mort-
gages was kept in the possession of C. A. Beck.  On

December 20, 1912, C. A. Beck disappeared, and the bank took possession of the property, advertised it for sale, and on February 12, 1913, sold it and applied the proceeds upon the note given it by C. A. Beck and Anna Beck. Subsequent to the taking possession of the property by the bank and prior to and on the day of sale both Wogan and Alfred Wells demanded possession of the personalty covered by the respective mortgages held by them. On the trial of the case the jury answered special questions to the effect that the property covered by both Files' and Wogan's mortgages was owned by and in the possession of C. A. Beck from their respective dates until December 26, 1912, and returned special verdicts finding for Wogan and Wells against defendant bank for $510 and $365, respectively; for Wogan against defendant Sivey for $510, and for defendant bank against defendant Sivey. The bank's motion for a new trial was overruled, and from the judgment rendered it appeals.

While there was testimony that the property was sold to Sivey by Beck and delivered into his possession prior to the execution of the Wogan mortgage and that Sivey made a payment of $118 to Beck, the jury has found that Beck was the real owner of the property when that mortgage was executed and that he continued in the possession of the same until after the bank's mortgage was executed. Substantially the same findings were made in respect to the property included in the Files mortgage. It appears that Beck brought most of the property from his farm to Fort Scott and exhibited it to the mortgagees, representing that he had sold it to Sivey and Wells. He not only joined in procuring the loans on these representations but he joined in the execution of the notes. It is conceded that both of the mortgagees, Wogan and Files, acted in good faith and upon the theory that the representations of the parties were true. From the findings of the jury it must be assumed that the property was not transferred but

that the ownership and possession continued in Beck. It follows that he caused his property to be mortgaged in each of the cases in the names of others and obtained the proceeds of the mortgages. The property mortgaged was in existence and was owned by him when he obtained the loans and caused the mortgages to be executed. Under the testimony and findings it must be held, too, that the mortgagees exercised reasonable diligence in ascertaining the ownership and character of the property mortgaged. The mortgages were recorded and if they were valid instruments the title to the property passed to the mortgagees under the law. While the owner and those acting for him in the execution of the mortgages were guilty of fraud their fraud did not, of itself, affect the validity of the mortgages since the mortgagees acted in good faith and without any notice of the fraudulent purpose of the mortgagors. Both parties must participate in the fraud in order to avoid the mortgage. (*National Bank v. Ridenour,* 46 Kan. 707, 27 Pac. 150, 26 Am. St. Rep. 167; Jones on Chattel Mortgages, 5th ed., § 335.) Unquestionably the mortgages are valid as between the mortgagees and Beck as well as his tools who acted as mortgagors.

Are they valid as to a subsequent mortgagee? A case which tends to support the claim of invalidity is *Mackey v. Cole,* 79 Wis. 426, 48 N. W. 520, 24 Am. St. Rep. 728. There an owner of horses named McPherson executed a mortgage on them in the name of Doyle and the mortgagee believed Doyle to be the true name of the mortgagor. The mortgage was placed on record. Shortly afterwards McPherson took the horses to another town and sold them to one who had no notice of the mortgage except such as might be derived from the mortgage which was on file and purported to have been executed by Doyle. The court held that one having no interest in property could not mortgage it, and that the filing of a mortgage executed by the owner under a

fictitious name is not notice of such mortgage to a purchaser from the owner who negotiates a sale under his real name. The trial court ruled there that neither the mortgagee nor his agent had exercised due diligence in the matter, and that if they had done so they could easily have ascertained the true name of the owner and detected the fraud, and failing to exercise due diligence the mortgage was invalid. The supreme court, however, based its decision on the ground that the mortgage being in the name of another did not afford binding notice on purchasers. Our court appears to have taken a different view of the question in *Brittain v. Blanchard,* 60 Kan. 263, 56 Pac. 474. That case strongly tends to sustain the validity of the Wogan and Files mortgages. Foltz, who was a merchant, a farmer, a live-stock dealer and also a president of a bank, arranged to purchase a herd of cattle. He did not have the money with which to pay for them and therefore arranged to obtain a loan on the cattle which he purchased. Being the president of a bank and fearing that the giving of a mortgage on his property might impair the credit of the bank he arranged to have a bill of sale made to one of his employees who should thereafter execute notes and a mortgage to the parties from whom the money was obtained to buy the cattle. The arrangement was carried out except that the bill of sale was never executed. Subsequently a creditor of Foltz challenged the validity of the mortgage, and one of the grounds was that the mortgagor had no interest in the property described in the mortgage, and, further, that the recording of it did not charge creditors of Foltz with notice of a lien on the cattle. The mortgagees in that case were found to be free from fraud as Foltz had agreed to transfer the legal title to his employee and there was no purpose on their part to cover up the title to the property nor to defraud any one. The mortgage was held to be valid as against the creditors of Foltz, the court holding that:

"In the absence of a showing of fraudulent purpose

upon the part of B. S. & R. [the mortgagees] the mortgage was not invalid as to third persons because of V.'s [the employee of the purchaser] lack of property interest in the cattle."   (Syl. ¶ 1.)

Another case which is quite in point and in line with *Brittain v. Blanchard,* supra, was decided by the supreme court of Nebraska.   There a man calling himself M., not his real name, purchased a team of horses from a person who was unacquainted with him and gave a chattel mortgage on the team for the purchase price, which was duly recorded.   Shortly afterwards the mortgagor offered the team for sale to another under the name of D., his real name, and upon an examination of the records and finding no mortgage on file as against D. the horses were purchased.   Subsequently a controversy arose between the mortgagee and the purchaser, and it was held that where a person executes a chattel mortgage under a fictitious name and delivers it to the mortgagee who, without knowing that the name of the mortgagor was fictitious, records the mortgage in the proper county, the title to the property mortgaged vests in the mortgagee by the delivery of the mortgage and he may recover the property from another person to whom the mortgagor sells it under his true name after the mortgage was recorded.   (*Alexander Bros. v. Graves,* 25 Neb. 453, 41 N. W. 290, 13 Am. St. Rep. 501.)   The decision of the trial court holding the mortgages of Wogan and Files to be valid as against a subsequent mortgagee appears to be supported by *Brittain v. Blanchard,* supra, as well as the Nebraska case cited.

There is a further contention that the mortgages are invalid because of indefiniteness of description of the property.   The greater part of the property described in the mortgages consisted of mules, and the age, color and names of most of them were given substantially as they were described in the mortgage of the bank.   The farm implements were described according to the purpose for which they were designed to be used.   In the

Wogan mortgage it is recited that the property is kept
in Bourbon county while in the Files mortgage it is
stated that the property is kept on the Wells farm six
miles south of Fort Scott.  The property was, of course,
described as being that of Sivey and Wells, and it is
claimed that the mortgagees were negligent in filing
mortgages that did not give the true ownership and
location of the property.  As we have seen, most of the
properties were placed in the possession of the nominal
mortgagors and it was in their possession when it was
exhibited to Wogan and Files about the time the loans
were made.  The mortgagees acted with reasonable
caution and diligence when they insisted on the pro-
duction of the property that was to be mortgaged.
Beck and the parties who acted for and with him not
only brought in the property and exhibited it but they
gave assurance to the mortgagees of their right to
mortgage it.  It appears that Wogan did not see the
hogs which were included in his mortgage and it is
suggested that they may be imaginary hogs, but it ap-
pears to have been admitted at the trial that the prop-
erty described in the Wogan mortgage is included in the
bank mortgage and that described in the Files mortgage
is included in the Wogan mortgage.  The description
seems to meet the requirements of the law as deter-
mined in a number of cases.  (*Brown v. Holmes,* 13
Kan. 482; *Shaffer v. Pickrell,* 22 Kan. 619; *King v.
Aultman & Co.,* 24 Kan. 246; *Mills v. Kansas Lumber
Co.,* 26 Kan. 574; *Schmidt v. Bender,* 39 Kan. 437, 18
Pac. 491; *Ward v. Johnson,* 66 Kan. 813, 72 Pac. 242;
*Rudolph v. Commission Co.,* 76 Kan. 789, 92 Pac. 1103.)

In the Files mortgage it was recited that the mules
therein described were purchased from Beck, and this
afforded a clue towards identification and also to the
fraud of Beck.  We find no basis for the contention that
the mortgagees are estopped to insist on the validity
of the mortgages and to claim the property because of
their failure to exercise reasonable diligence for their

own protection. They had no reason to infer that Beck, Sivey and Wells were not acting honestly in the transfer of the property and the execution of the mortgages. Before that time Beck had been regarded as a successful and reliable farmer and stock raiser and appeared to have the confidence of his neighbors. The mortgagees did take considerable pains to ascertain the existence of the property as well as its value, and not knowing Sivey and Wells as well as Beck they took the aditional precaution to have the notes signed by Beck, whose responsibility was not questioned. They filed the mortgages for record, and it can not be said that they failed to exercise a reasonable degree of caution in the transactions.

The instructions, about which there is some complaint, appear to be substantially consistent with the views expressed herein. The assignment of the note and mortgage to Wells gave him the standing and right held by Files, the assignor, and under the testimony the awards made to the mortgagees are deemed to be justified.

The judgment of the district court is affirmed.