LEMBECK & BETZ EAGLE BREWING COMPANY, a corporation,

*v.*

MIKE BARBI et al.

[Decided March 21st, 1919.]

1. A first and second mortgage to a building and loan association, prior in time to another to a brewing company, never having been canceled of record, will take precedence over the mortgage given the brewing company, although the building and loan association included them in still another mortgage to it, which itself may be subsequent to the mortgage to the brewing company.

2. Every grantee is bound by everything that appears in his deed.

3. A grantee is chargeable with knowledge of the title of his grantor as it exists in unbroken sequence on the records of the clerk's office.

4. A deed or mortgage made by a grantor in a fictitious name, good as between the parties, is not good as against a purchaser for value without actual or constructive notice.

5. Where a mortgage was recorded in a name not the name of the real maker, such mortgage was not constructive notice to a subsequent mortgagee.

6. The recording of a deed to a man and his wife by the name of "Borbely" was constructive notice of the real names of the owners of the land to a mortgagee who took from them a mortgage in the name of "Barbi," sometimes known as "Barboe."

On pleadings and proofs.

*Mr. D. Eugene Blankenhorn,* for the complainant.

*Mr. Adrian Lyon,* for the defendant Citizens' Building and Loan Association.

LEWIS, V. C.

In June of 1908, Michael Borbely applied to the Citizens' Building and Loan Association of Perth Amboy, New Jersey, for a loan of $800 on lot 8 on the northwest corner of Lawrence and Pine streets, in that city, being twenty-five feet wide by eighty-five feet deep, producing his deed from Koyen and Oster-gaard, bearing date March 11th, 1908, recorded March 20th, 1908, which deed was made out to him and his wife under the name and spelling as follows: "Michael Borbely and Elizabeth, his wife."

He was not known by any other name to the solicitor who drew up the bond and mortgage. The bond and mortgage were drawn in the names as they appeared in the deed, but when signed by Borbely and his wife, the signatures looked like "Mezk Barbily," and "lizi Bourbi," or as nearly in that way as can be made out from the signatures.

The solicitor procured a search of title to the lot, made by the county clerk of Middlesex county, which showed the deed and mortgage and two lien claims, both of which were against Michael Borbely and Elizabeth Borbely.

The mortgagors applied for a further loan of $300 which was granted, which bond and mortgage are dated August 5th, 1908. In this second bond and mortgage the names were used as in the prior mortgage and were signed in exactly the same way, with the exception that on the mortgage the wife seems to have spelled her last name "Barbie" or "Barbei."

The mortgagors had a pass-book made out in the names as given on the deed and in the mortgages, and continued to make payments on account of the mortgages until October of 1912, when they had reduced the amount to the sum of $876.58. At that time they applied for a further loan of $1,800 which was

to include the amount due on the two former mortgages, and the balance due on an additional lot known as Lot No. 7, adjoining. This loan was granted, and another deed for Lot No. 7 was brought to the building association's solicitor, made out in exactly the same manner as the other deed, namely, "Michael Borbely and Elizabeth Borbely, his wife," which was dated October 21st, 1912, and recorded November 11th, 1912.

A new mortgage was made out to the association for the sum of $1,800, covering both lots, using the names as they had been given. A search was made on the two lots, which showed the two deeds, the two prior mortgages and the two lien claims already referred to. The search was made against Michael Borbely and Elizabeth Borbely, the names appearing in the deeds, neither the searcher nor the solicitor of the building and loan association knowing that the parties went under any other name than that given in the deed and prior mortgages. The new mortgage was executed and acknowledged and recorded.

Borbely was a liquor dealer, and on May 11th, 1910, over two years before the execution and recording of the $1,800 mortgage, he gave a mortgage to the complainant for $800, which mortgage was recorded on May 15th, 1910. This mortgage was made out in the name of "Mike Barbi and Lizzie Barbi," sometimes known as "Barboe," and purported to cover property on the corner of the two streets, twenty-five feet wide by one hundred feet deep, which, as a matter of fact, was a greater depth by fifteen feet than the parties owned. The name on the book of the brewing company produced in evidence was "Babey."

. It is admitted that the mortgagors in the mortgages to the building and loan association are the same who executed the mortgage to the complainant.

The question in issue is, whether the mortgage of complainant is prior to that for $1,800 held by the association.

The first and second mortgage, never having been canceled of record, will undoubtedly take precedence of the mortgage given to the brewery company, notwithstanding that the building and loan association included them in the mortgage for $1,800. That appears to be quite plain and needs no discussion.

The question is narrowed down, therefore, to whether the brewery mortgage will take precedence of the last mortgage given by the building association, less the amount due on the first and second mortgage.

The complainant contends that the mortgagors held themselves out as "Barbi" or "Borbi" to the knowledge of the building and loan association, because the association had in its possession at the time of the making of the $1,800 mortgage two bonds and two mortgages which were so signed by these parties.

Of course, every grantee is bound by everything that appears in his deed, and a nice question arises whether the building and loan association was put on inquiry from the fact that the names as signed by Borbely and his wife, differed from the names in the body of the instruments and the acknowledgments. The solicitor for the building association testified that if his attention had been carefully directed to the signatures at the time the mortgage was signed, he would merely have supposed that it was an illiterate way that the parties had in writing their names. If Borbely and his wife had signed each of the mortgages and bonds alike, namely, "Mike Barbi" and "Lizzie Barbi," it would seem that this would have been sufficient to put the building and loan association on inquiry, and if they had followed it up, they would have found the mortgage for $800 to the brewery company.

However, such is not the case. The building and loan association would not have been able, in my opinion, to have found the record of the mortgage given to the brewery association.

Besides this "a grantee is chargeable with knowledge of the title of his grantor as it exists in unbroken sequence on the records of the clerk's office." *Wallace* v. *John Silsby and Henry Marlin, 42 N. J. Law 1.*

In that case Chief-Justice Beasley held: "That the title of the grantor, as it appears in regular sequence and unbroken continuity on the record, is a fact within the consciousness of the grantee at the time that he accepts his conveyance, is a conclusion *juris et de jure*. This is a doctrine which I do not think has ever been brought into doubt in this state." See also *Losey* v. *Simpson, 11 N. J. Eq. 249.*

This would seem to indicate that the brewing company must be held to have known that the property stood in the name of Michael Borbely and Elizabeth, his wife, and for its mortgage to have taken precedence of the building and loan association mortgage of 1912, it was absolutely necessary that it should have been made up in the same of Michael Borbely and Elizabeth, his wife.

Of course, a deed or mortgage made by a grantor in a fictitious name is perfectly good as between the parties themselves, but, in my opinion, not as against a purchaser for a valuable consideration, who had neither actual nor constructive notice.

Complainant contends that even though the proper name of the mortgagors is Borbely, and that the name by which they mortgaged the land was fictitious, yet, he being the real owner of the property, and the mortgage having been recorded, it is notice to all subsequent purchasers and mortgagees, citing the following cases in support of his contention: *Weihl, Probasco & Co. v. C. P. Robertson et al., 97 Tenn. 458; 39 L. R. A. 433; Fallon v. Kehoe, 38 Cal. 44; David v. Williamsburgh City Fire Insurance Co., 83 N. Y. 265.*

The case of *Mackey v. Cole, 79 Wis. 426,* takes the opposite view. In this state the question does not seem to have arisen except indirectly.

I am, therefore, of the opinion, that the mortgage of the building and loan association for $1,800 is entitled to priority of payment over the mortgage of the Lembeck & Betz Eagle Brewing Company, because, at the time the building and loan association mortgage was given, the mortgage of the brewing company was not constructive notice, inasmuch as it was recorded in the names of the mortgagors in such form that a search in the real names of the owners would fail to disclose it. If the searcher is charged with the duty of searching for fictitious names, either in the chain of title, or for encumbrances in order to locate instruments of record affecting the premises involved, the recording system would be a nullity, and the searcher would be helpless, because he has no means of determining what fictitious name may have been employed by a grantor or a mortgagor in a previous deed or encumbrance.

An otherwise perfect chain of title search, based upon a search in the real names of the parties as they appear of record would not be worth the paper it was written on, because you could never tell what outstanding deeds or encumbrances might exist of record affecting the premises in fictitious names.

To sustain the brewing company's mortgage as the prior lien would be to sustain the illogical and intolerable situation thus outlined, and would make ducks and drakes of the recording system in New Jersey. A search would be useless and the result would be confusion and confusion worse confounded.

Furthermore, on the pure equities of the situation, the brewing company was in an undoubted position of ability to protect itself, as well as the building association, against a situation such as has now arisen, by having a chain of title search made which would have disclosed the correct name in which ownership of the premises then stood, and then insisted upon the mortgage being executed accordingly. If that had been done—and in these days no reasonably prudent person takes title or makes a mortgage loan without a search—the brewing company's mortgage would have been indexed in the same names as the owners, "Borbely," and the building association's search made by Mr. McWilliams in that name would have disclosed the brewing company's mortgage, and the building association could then have taken appropriate action to protect itself. The recording of the Borbely deed was unquestionably constructive notice to the brewing company of the real names of the owners.

I will advise a decree in accordance with these views.