TOM WINDLE, TIB WINDLE and WILLIAM WINDLE, Doing Business as THE WINDLE BROTHERS HORSE AND MULE COMPANY, Appellants, v. CITIZENS NATIONAL BANK AND GEORGE KOLTERMAN, Respondents.

Springfield Court of Appeals, December 6, 1919.

1. **CHATTEL MORTGAGES: Record of Mortgage in Fictitious Name Not Notice.** A mortgage of personalty made by the owner in a

Windle et al. v. Citizens Nat. Bank & Kolterman.

fictitious name and placed on record is not constructive notice to one dealing with the owner in his true name.

2. **MORTGAGES: Mortgage or Conveyace in Fictitious Name Valid.** If real estate is purchased by a person under a fictitious name, the recorded deed being in such name, a mortgage or other conveyance in such name is good.

3. **CHATTEL MORTGAGES: Record of Mortgage in False Name as Constructive Notice.** Where horses and harnesses were sold to a person under a false name, and mortgages taken back by the sellers in the same name, such a mortgage on record is constructive notice to a person dealing with the buyer under such name.

4. **SALES: Purchase Under False Name Passes no Title Even Against Innocent Purchaser.** If a purchaser of chattels misrepresents his identity passing under a false name, and induces a pretended sale to himself under the belief that such sale is to another, no title passes to him from the sellers which he can pass on to another, even an innocent purchaser, the sellers not suffering the loss on any ground that they conferred on the fraudulent buyer the apparent right of ownership.

5. ———: **No Waiver of Right to Reclaim from Fraudulent Buyer.** Sellers of personalty to a buyer who passed under a false name and gave back mortgages as security in such name *held*, not to have waived their right to reclaim the property from transferees of the fraudulent buyer, though, after they asserted their right and obtained possession of the property, they foreclosed their mortgage, believing it to be valid; waiver implying knowledge and intention, neither of which was present.

Appeal from Circuit Court of Barton County.—*Hon. B. G. Thurman,* Judge.

REVERSED AND REMANDED.

*Owen & Davis* for appellants.

*J. H. Bailey* and *Martin & Martin* for respondents.

STURGIS, P. J.—The plaintiff was denied any recovery in this suit in replevin for four horses and a set of harness and appeals. The pleadings are conventional, the plaintiffs claiming ownership and right of possession and the defendants doing the same. The material facts are not disputed. The plaintiffs in their firm name are

engaged in buying and selling horses and mules at Joplin, Mo., and are the original owners of two of the horses and the set of harness in controversy. In April, 1917, a man representing himself to be J. W. Hughes, offered to buy of plaintiffs the two horses and the set of harness. The price was agreed upon and a note for that amount secured by a chattel mortgage on the horses and harness so purchased and two other horses which said J. W. Hughes claimed to own was signed and executed in the name of J. W. Hughes. The two horses and harness were then delivered to him by plaintiffs.

A short time thereafter the plaintiffs learned that the property mortgaged was being sold and dissipated and brought this suit. It developed at the trial that Hughes real name was W. L. Hughes and not J. W. Hughes who was a farmer living in the country nearby. This same W. L. Hughes had previously become indebted to the defendant bank in the name of and representing himself to be G. H. Bell, another farmer of that county. For some other crime said W. L. Hughes was arrested and held in jail at Pittsburg, Kansas. Defendant's cashier went there May 31, 1917, and by paying another debt of W. L. Hughes induced him, in payment of its debt contracted in the name of G. H. Bell, to give defendant a bill of sale and possession of all the property in controversy, the defendant not knowing of plaintiffs' mortgage or the means by which he got possession of the two horses and harness from plaintiffs. Both plaintiffs and defendants acted in good faith and each innocently dealt with W. L. Hughes under a false name assumed by him. When defendant attempted to secure payment of its debt, contracted by W. L. Hughes under the name of C. H. Bell, by taking the property in controversy it caused the records to be searched and found no mortgage against this property given by W. L. Hughes, because plaintiffs mortgage then on record appeared to be from J. W. Hughes.

The defendant bank insists that when it took the bill of sale it was dealing with W. L. Hughes in his right name, that plaintiffs' mortgage given in the name of J.

Windle et al. v. Citizens Nat. Bank & Kolterman.

W. Hughes was not binding on or notice to it of any encumbrance against this property, that J. W. Hughes and W. L. Hughes are entirely distinct grantors and that in dealing with W. L. Hughes and his property defendant was not bound to look for or take notice of a mortgage from J. W. Hughes. On the other hand plaintiff insist that as they owned part of this property and sold it to J. W. Hughes, or a man representing that to be his name, and that as this man by and in the same name mortgaged the property back to them to secure the purchase price, then anyone dealing with them did so with constructive notice of their mortgage. It must be remembered, however, that only part of the mortgaged property was sold by plaintiffs to J. W. Hughes.

Not inquiring into the source of W. L. Hughes' title but considering him merely as owner, we think defendants' contention correct that a mortgage of personal property made by the owner in a fictitious name and placed on record is not constructive notice to one dealing with the owner in his true name. The defendant cites in support of this rule of law, Mackey v. Cole. 79 Wis. 426, 48 N. W. 520, and two Missouri cases, New Eng. Nat. Bank v. Northwestern Nat. Bank, 171 Mo. 307, 327. 71 S. W. 191, and Crawford v. Benoist. 97 Mo. App. 19, 70 S. W. 1908, both of which follow Mackey v. Cole, supra. Plaintiffs contend that this point was not necessary to a decision in the Missouri cases and that the court's remarks on this point were *obiter*. A reading of these cases, however, leaves no doubt as to the views of the court on this question. Such, too, is the great weight of authority. In 5 R. C. L., p. 413, 414, this is stated: "The weight of authority is that a mortgage on personal property made by one who was not the owner of the property, or executed by the owner in a fictitious name, although placed on record, is not constructive notice to anyone dealing with the owner in his true name. The reason of this rule is that such conveyances in fictitious names lie outside of the chain of title and therefore im-

part no notice. So where a mortgagee advances money to the person in possession of the property he is not obliged to look for the mortgages on his interest in the property in any fictitious name nor in the name of anyone acting for him." [Sec. 11 C. J. 540, sec. 228.] In Johnson v. Wilson & Co. (Ala.), 34 So. 392, the law is stated thus: "In other words, the record of a mortgage executed in the name of A. W. Dixon is not notice that J. W. Dixon executed it. The names are as entirely different as are the names of J. W. Dixon and J. W. Smith. Had Dixon assumed the name of J. W. Smith, and executed the mortgage, signing that name instead of his true name, it could hardly be doubted, although he bound himself, that the record of it would not have operated as notice to the plaintiffs." [See, also, Wunschel v. Farmer's State Bank (Tex.), 203 S. W. 924; and Lembeck & Betz Eagle Brewing Co. v. Barbi (N. J.), 106 Atl. 552.] As to the horses owned by W. L. Hughes other than those purchased by him in the name of J. W. Hughes and mortgaged back in the same name for the purchase price the law clearly is that the plaintiffs' mortgage given in such name was not notice to defendant and plaintiff cannot recover same.

As to the two horses and harness which plaintiffs sold, in form at least, to J. W. Hughes and took back this mortgage in the same name, there is much reason for holding that such mortgage is constructive notice. The Supreme Court of Nebraska in Alexander v. Graves, 25 Neb. 453, 41 N. W. 290, 13 Am. St. Rep. 501, decided this very question in favor of the mortgagee as against an innocent purchaser on the same facts here presented. The court said: "It would seem that the sale and delivery of the property to Davis, under the assumed name of McCoyl, transferred the title of the property to him, which was immediately transferred back by the mortgage. The mortgage was valid. By it the title was transferred to plaintiffs as fully as it had been received by the purchaser from them. Plaintiffs acted in good

faith, and immediately thereafter, and before the purchase by defendant, placed the mortgage on record in the proper county." This case finds support in Wogan v. Citizens Bank (Kan.), 149 Pac. 411. In Jones on Chattel Mortgages (5 Ed.), sec. 247A, the general rule as to recorded mortgages given in a fictitious name not being constructive notice, as held in the leading case of Mackey v. Cole, supra, is recognized, but the Nebraska case of Alexander v. Graves, supra, is also treated as being good law to the effect that where a man purchases property in an assumed or fictitious name and at once mortgages same to secure the purchase price, then such recorded mortgage does give constructive notice. The mortgage conveys the same title the mortgagor got by his purchase and by the same name. It is said in the quotation from 5 R. C. L. 414, supra, that "The reason for the (general) rule is that such conveyances in fictitious names lie outside the chain of title and therefore impart no notice." But if there had been any record, such as a bill of sale of the transfer of the property to the mortgagor, it would have run in the same fictitious name and the mortgage would have been in the same name. There can be no doubt that if a person purchased real estate in a fictitious name, the recorded deed being in such name, then a mortgage or other conveyance in such name would be good. [Wilson v. White (Cal.), 24 Pac. 114; Glenovich v. Zurich (S. Dak.), 101 N. W. 1103.] We are constrained to hold, therefore, that plaintiffs' mortgage gave constructive notice and is valid as to the two horses and harness originally owned by plaintiffs.

Another view of this case leads to the same result: to-wit, that by reason of the fraud of W. L. Hughes in representing himself to be J. W. Hughes and his purchasing and mortgaging the property in an assumed name, no title passed to W. L. Hughes and none passed from him to defendant. The vendor of property has the right to contract with whom he pleases and to know to whom he is selling. It follows that if a purchaser misrepresents who he is and induces a pretended sale to

himself under the belief that such sale is to another, then no title passes. In such a case there is no real purchaser for the person misrepresented is not buying and the person who obtains possession and afterwards claims title is not himself the purchaser. [Smith Typewriter Co. v. Stidger (Col.), 71 Pac. 400; Rodliff v. Dallinger (Mass.), 4 N. E. 805.] In Loeffel v. Pohlman, 47 Mo. App. 574, the court held that (syllabus), "If the owner of goods is induced by fraud to part with possession of them without intending to transfer the title to the party thus obtaining them, as where such party falsely impersonates a third person, and thus induces the owner to sell the goods to him in the belief that he is such third person, no sale or transfer of title is effected, and no act of rescission is necessary in order to entitle such owner to reclaim the goods." The cases there cited and quoted from show that this rule of law applies though the property has passed into the hands of an innocent purchaser. Where a person falsely represented himself to be another person, a member of a certain partnership, and thereby induced a sale and delivery of the property, it was held that no title passed. Alexander v. Swackhamer (Ind.), 4 N. E. 433, where the court said: "In the case before us, both upon the facts assumed in the instruction, and as they appear in the evidence, there was no contract of sale to the spurious representative of the firm, one of whose members he falsely personated. He did not propose to buy on his own account, nor did the plaintiff contemplate a sale to him. The plaintiff contracted upon the supposition that he was selling to Fort, Johnson & Co., through the agency of a member of that firm. He did not agree to sell or contemplate a sale to any other person, nor did the person with whom he negotiated propose to purchase for himself or any other than Fort, Johnson & Co. The transaction resulted in a misadventure. No sale was made to Fort, Johnson & Co., and, as no other was proposed or contemplated, none was made. In the language of the instruction given, the contract was wholly void. By means of a trick the naked possession

of his property had been delivered to another by plaintiff, while the title and ownership remained in him after the delivering; the same as before. No one can transfer a greater right or better title to property than he possesses himself." It is pointed out in Wyckoff v. Vicary, 27 N. Y. Supp. 103, that, while the seller might affirm the sale and hold the fraudulent purchaser "It was optional with them to either hold him or reclaim their property." The same reason applies for holding that no title passes in a case like this as where the purchaser of chattels for cash wrongfully obtains possession without making payment. In such case no title passes even against an innocent purchaser. [Johnson-Brinkman Com. Co. v. Central Bank, 116 Mo. 558, 22 S. W. 813; Cass County Bank v. Hulen, 195 S. W. 74.]

The contention of defendants that because plaintiffs conferred upon Hughes the apparent right of ownership, they must suffer the loss as against defendants, is untenable. Hughes was guilty of obtaining this property under false pretenses and the rule governing the facts in a case like this is stated in 15 Cyc. 773, in the following language: "Whenever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it. This rule does not apply, however, in cases where the wrong was accomplished through the instrumentality of a criminal act; it being held in such cases the crime, and not the negligent act, is the proximate cause of the injury."

We find no facts in this case showing a waiver by plaintiffs of their right to reclaim this property. They instituted this suit as soon as they learned that Hughes was disposing of his property including that covered by the mortgage. They doubtless relied upon the validity of their mortgage and so claimed all the property covered by it and did not yet know that Hughes had contracted with them in purchasing and mortgaging this property in a false name thereby rendering the mortgage void as against third parties. The fact that after they had asserted their right and obtained possession of the prop-

erty they foreclosed the mortgage believing it to be valid cannot be construed as a waiver. Waiver involves knowledge and intention and neither is present here. [24 Cyc. 259 and 261.]

It follows therefore that judgment should have been rendered for plaintiffs for the two horses and harness originally belonging to them and claimed to have been sold by them to W. L. Hughes, defendants' vendor; and in defendants' favor for the other two horses as to which the mortgage is void. The case is reversed and remanded to be proceeded with accordingly. *Farrington* and *Bradley, JJ.,* concur.