H. E. ESTY, RESPONDENT, v. C. H. WALKER, APPELLANT.*

Kansas City Court of Appeals. December 5, 1927.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ. section 2708, p. 764, n. 76; section 2715, p. 771, n. 58; section 2840, p. 865, n. 48; section 2890, p. 919, n. 49; section 3017, p. 1037, n. 76; Evidence, 22CJ, section 168, p. 207, n. 51; section 193, p. 226, n. 38; section 1300, p. 1015, n. 76; Pleading, 31Cyc, p. 87, n. 64; p. 759, n. 93; Recoupment, Set-off and Counterclaim, 34Cyc, p. 736, n. 84; Sales, 35Cyc, p. 50, n. 27; p. 86, n. 26; Trial, 38 Cyc, p. 1340, n. 98.

*Morrison, Nugent, Wylder & Berger* for respondent.

*W. W. Brady* and *Thurman L. McCormick* for appellant.

BLAND, J.—This is an action to recover the purchase price of a Poland China pedigreed sow known as Black Lil II. There was a verdict and judgment in favor of plaintiff in the sum of $1000, and defendant has appealed.

The facts show that defendant purchased the sow on October 11, 1920, at an auction sale held at the stock yards in Kansas City, Missouri, but he claims that plaintiff was not the owner of it and that if he were, he is estopped by his conduct in claiming to be such. The answer upon which defendant went to trial consisted of a general denial and set up the following facts by way of estoppel: That defendant was and had been for a long time the publisher of the Poland China Journal, a newspaper devoted to the advertising of live stock and the publication of matters of interest to live stock breeders and growers; that for a long time prior to October 11, 1920, defendant published a large number of advertisements in his newspaper for Meyer Brothers and that by reason thereof they became indebted to defendant in the sum of $1132; that although defendant made numerous and vigorous efforts to secure from Meyer Brothers the amount due and owing as aforesaid, they had failed and refused to pay the same; that the financial condition of Meyer Brothers on October 11, 1920, was such as to render the collection of the amount due defendant very uncertain; that plaintiff is the father-in-law of W. V. Meyer a member of the firm of Meyer Brothers and that the financial condition of the firm was known to plaintiff on October 11, 1920, and for a long time prior thereto; that on said date defendant attended a hog sale conducted by one Moore at the Live Stock Exchange Building in Kansas City, Missouri: that the stock to be sold at said sale was listed in a catalog issued prior thereto but the sow that defendant purchased thereat called Black Lil II was not listed in the catalog; that, nevertheless, the sow was offered for sale but before bids were taken on it an announcement was made that Black Lil II was from the farm of Meyer Brothers and owned by them; that at the time of this announcement plaintiff was present and heard or should have heard it but he did not, nor did anyone in his behalf object to said announcement or ask that it be changed.

. The answer further alleged that said announcement of the ownership of the sow and the said conduct of plaintiff induced defendant to bid on the sow, believing that it belonged to Meyer Brothers; "that said announcement, made with the consent of plaintiff, misled the defendant herein in that it induced him to place the exorbitant and unreasonable bid of $1000" on the sow; that the sow was not worth more than $350 and by reason of such misleading statements as to its ownership defendant was induced to and did bid $1000 for it: that "except for said misleading and fraudulent statement made as aforesaid and relied upon by the defendant," he would not have bid on the sow in any amount whatever; that by reason of "the aforesaid misleading and fraudulent announcement" concerning the ownership of the sow and the said conduct of plaintiff, defendant was caused to change his position to his detriment:

". . . that the defendant has paid the full purchase price of $1000 to Meyer Brothers, the announced owner of Black Lil II, by crediting the account of said Meyer Brothers for the amount of $1000; that the plaintiff herein is estopped to deny the ownership of Meyer Brothers of Black Lil II."

The reply consisted of a general denial.

Plaintiff's testimony tends to show that he was a farmer living on a farm owned by him in Leshara county, Nebraska, and known as the "Pleasant Hill Farm;" that during and prior to the summer of 1920, he was engaged in a partnership with his son-in-law, W. V. Meyer; in the hog raising business; that said Meyer was a member of the firm of Meyer Brothers located at Hooper, Nebraska; that while in partnership with his son-in-law they owned the sow in question but on September 1, 1920, plaintiff became its sole owner; that the sow was caused to be put up at auction on October 11, 1920, at the solicitation of a Mr. Moore who asked plaintiff to permit him to sell it with other hogs that were to be sold at an auction sale to be held by Moore in Kansas City at said time.

Defendant's evidence tends to show that Meyer Brothers owed the amount mentioned in the answer to the Poland China Journal, which, on October 11, 1920, was a partnership composed of defendant and his brother, Hays Walker; that before bids were taken upon the sow it was announced by Mr. Moore and the auctioneer, Mr. Gardhouse, that Black Lil II was from Meyer Brothers' Farm and was owned and offered for sale by Meyer Brothers; that defendant knew that Meyer Brothers were in a bad financial condition and that the money owed defendant would be difficult, if not impossible, of collection unless some special circumstance arose to aid him in collecting it; that it was with this circumstance in mind, together with the said announcement made at the sale, that he was induced to bid upon the

sow; that plaintiff was present at the time of announcement and made no objection to it and, in fact, said nothing; that the sow did appear in the catalog of the regular offerings in consequence of which there was no information available to those present as to the ownership of the sow and the party by whom said sow was being offered for sale except the announcement aforesaid; that relying upon said announcement made prior to the sale, defendant bid in the sow at the price of $1000; that at the time he made the purchase of the sow he knew that its real value was not to exceed $300 or $400 but on account of the announcement aforesaid and on account of the fact that Meyer Brothers were indebted to the Poland China Journal in the sum of $1132 he was willing to pay Meyer Brothers the excessive price of $1000 for the hog so as to obtain from Meyer Brothers something on the indebtedness due the newspaper; that shortly after the auction was finished plaintiff demanded from defendant the payment of one-half of the purchase price of the sow, stating that he owned a fifty per cent interest in it; that defendant refused to pay plaintiff any part of the purchase price and told him that he had bought the sow from Meyer Brothers and that he would settle with them; that prior to the sale, he had never heard of plaintiff or the farm claimed to be owned by him, to-wit, "Pleasant Hill Farm."

The testimony of plaintiff further tends to show that he exhibited the hog in question at various fairs prior to the auction sale and that he entered the hog at these fairs in the name of the "Pleasant Hill Farm" which was owned by him; that he entered the sow at the Sedalia State Fair, held in the summer of 1920, in the same manner but that he was not present there but was represented by M. E. Meyer, a brother of W. V. Meyer, who was also a member of the partnership of Meyer Brothers; that after said M. E. Meyer arrived at Sedalia he changed the entry of the hog to Meyer Brothers without the knowledge or consent of plaintiff; that plaintiff was present at the auction sale in question and heard what was said by the auctioneer and other parties concerning the sale of his sow; that Moore pointed the sow out in the ring and said, "We now offer Black Lil II, Grand Champion of Missouri, for sale;" that nothing else about the hog was said at the sale; that no statement was made in reference to Meyer Brothers owning the hog, nor did anyone say that plaintiff owned it. In other words, no announcement was made as to the ownership of the animal.

Defendant's evidence tends to show that it was customary, at sales of this kind, for the names of the owners of the hogs to be sold, and a description of the animals, to be printed in a catalog and if a hog was sold whose name did not appear in the catalog, it was customary to announce its owner "because it is necessary in order to identify the owner as he is the one man that can 'guarantee' the

animal to be a breeder;" that "the whole pure-bred business is made upon the honor of the man in it and the man responsible for the 'guaranty' of the animal," and for this reason it was important to know from whom one was buying a hog. Plaintiff admitted that the owner of registered stock is the one to whom the purchaser looks for a "guaranty" as to its breeding and that it was customary at auction sales to have the name of the owner of the hog appear in the catalog. He testified that it was very seldom that the auctioneer or anyone else orally announced the name of the owner of a hog, but we assume that this is true because the catalog usually showed it. It would appear that it was important that the ownership of the hog be announced if it were not disclosed in the catalog but plaintiff testified that the ownership of the sow in question was not announced in this instance and the jury having found for plaintiff, we must take his evidence as true. Plaintiff's evidence tends to show that the sow in question was worth more than defendant paid for it.

The evidence shows that the hog was bid in for defendant by one Cauthorne and plaintiff testified that before the parties left the premises he asked a man in the crowd to point out the defendant to him as he had never met him; that he approached the defendant and introduced himself as the prior owner of the hog and requested the payment of $1000 the purchase price; that defendant stated that he would send plaintiff a check in a few days; that plaintiff then took the night train for his home in Leshara county, Nebraska; that upon reaching home he sent to defendant a certificate of the registry of the sow, showing a transfer of the hog from "Pleasant Hill Farm" to the "Heart of America Farm," which latter farm, the evidence shows, was a stock farm in Jackson county, Missouri, owned by defendant. The evidence also shows that this certificate of registry was used by defendant in reselling the hog. Plaintiff testified that demand for payment of the hog was thereafter made by plaintiff upon the defendant and that the latter intimated that he would have the money available at the completion of the sale of his live stock, which was taking place in connection with the death of one Garatt, a former partner in the conduct of the Heart of America Farm, who died in March, 1920; that payment, however, was never made by the defendant. Defendant denied that he had ever promised to pay plaintiff for the hog.

Near the close of defendant's evidence he was recalled and testified that he gave credit upon the account of the Poland China Journal for the purchase price of the sow. He was then asked whether or not the sow was purchased for and on behalf of the Poland China Journal but the court sustained plaintiff's objection to this testimony based upon the ground, among others, that the answer admitted that the

hog was purchased by the defendant. At the close of the testimony the court permitted defendant to amend his answer by interlineation so as to allege that the Poland China Journal was the purchaser of the hog instead of defendant and that defendant gave credit to Meyer Brothers upon the account of the Poland China Journal. This amendment to the answer, alleging that the Poland China Journal was the purchaser of the hog instead of the defendant, was no doubt made for the reason that without a pleading of this kind and testimony to support it, there was no basis for the plea of estoppel. For had defendant purchased the sow from Meyer Brothers, he could not have off-set the indebtedness due from Meyer Brothers to the Poland China Journal, which was a partnership composed of defendant and his brother, against the claim of Meyer Brothers for the purchase price of the sow. [Lamb v. Brolaski, 38 Mo. 51; Weil v. Jones, 70 Mo. 560.] However, it is quite apparent that after the amendment was made the defense based on estoppel fell to the ground in any event because there was no evidence tending to show that the hog was purchased for or on behalf of the Poland China Journal, as alleged in the amended answer. As before stated, the court sustained the objection of plaintiff to the question seeking to elicit this information and the record fails to disclose that after the answer was amended, or at any other time, was there any evidence introduced tending to show that the hog was purchased by or on behalf of the Poland China Journal, but the evidence of defendant is very clear that he himself purchased the animal. In addition to this, defendant offered five instructions all upon the theory that he purchased the animal, the Poland China Journal not having been mentioned in any one of them.

It is insisted that the petition states no cause of action. The petition reads as follows:

"For cause plaintiff states that at all times herein mentioned he has been and still is engaged in the raising, marketing and selling of thoroughbred Poland China hogs.'

## II.

"That on the 11th day of October, 1920, this plaintiff then and for a long time prior thereto, the owner of the animals hereinafter described in the petition, sold and delivered to the defendant one certain registered thoroughbred Poland China Sow registered, known and called Black Lil II, at and for the purchase price and sum of $1000; to be paid in cash by defendant on receipt of said animal; that said sale was in Kansas City, Missouri, the hog delivered to the defendant in Kansas City, Missouri, and although demand for payment of said sum has been made, payment thereof has been refused without justification or excuse:

"Wherefore, plaintiff prays that he may have and recover judgment of and from the defendant in the sum of $1000, together with six per cent interest from October 11, 1920, and costs of suit."

It is claimed that the petition does not disclose whether the suit is based on an express contract, an open account or is to recover for goods sold and delivered. In this connection it is argued that—

"It will be at once observed that neither in this conclusion of the plaintiff or (nor) in any other statement of the petition is it asserted or alleged that the defendant purchased said sow of and from the plaintiff and agreed to pay therefor the sum of one thousand dollars or any other sum whatever.

"In other words, the petition entirely fails to state any promise or agreement on the part of the defendant to pay the plaintiff the alleged purchase price or any sum whatever, or does it allege any facts out of which such promise could be implied.

"No offer of said hog by the plaintiff is alleged, and no acceptance of an offer so made is alleged or claimed, and it further appears that no facts out of which such an offer and acceptance could arise are set forth in said petition."

It is also claimed that the petition fails to allege that there was any sum due and owing from defendant to plaintiff. There is no merit in the assault made upon the petition. There was no attack made on the petition at the trial, except an objection to the introduction of any testimony on the alleged ground that the petition failed to state a cause of action. This is a method of attack that is not looked upon with favor and if the petition states any cause of action whatever, however defectively set forth, it must now be held to be good.

"When it is said that one has sold to another certain property for a stated sum of money, the statement implies that the price was agreed upon, and that the buyer promised to pay it. This would be the ordinary meaning of the language. The complaint, therefore, does, in substance, aver a promise by the defendant to pay to plaintiff the money sued for. The averment is defective in that it is not direct, but it is sufficiently certain to the ordinary mind. It is of the class of defects which should be considered as cured by the verdict and as not sufficiently prejudicial to the other party to warrant a reversal on appeal." [Christensen v. Cram, 105 Pac. (Calif.) 950.] [See, also, Forthman v. Deters, 206 Ill. 159, 166; Confectioners' Machinery & Mfg. Co. v. Panoualias, 134 Fed. 393.]

It is claimed that the court erred in admitting exhibit No. 1, which plaintiff testified was a duplicate of the certificate of registry of the sow, which certificate was furnished defendant by plaintiff. It is now contended that "the certificate of registry shows on its face when properly construed and understood to be an instrument to indicate the breeding and not a means by which title is transferred or

ownership evidenced and, therefore, incompetent for the purpose of showing ownership of the property in plaintiff." Defendant objected to the certificate on the ground that it was not the original; that the record itself from which the original statement was taken was the best evidence and that the exhibit did not tend to show ownership. The record then discloses that the following occurred:

"THE COURT: I think it's admissible for another reason, and that is to show the quality and character of the animal. It is claimed you paid an excessive price for it, and I think it's admissible to show what kind of stock it was, breeding and quality and probable value.

"MR. McCORMICK: If the submission is limited to that purpose, I have no objection.

"THE COURT: I rather think that it ought to be."

The court afterwards admitted the copy of the certificate. It appears that the original certificate of registry furnished defendant by plaintiff could not be produced, although notice to produce the same was served upon the defendant, for the reason that defendant delivered it to the purchaser of the hog who bought it from him. But from what is shown from the above excerpt from the record, it appears that, finally, defendant conceded that the exhibit was admissible to show the quality and character of the animal in view of the allegation in the answer that defendant paid an excessive price for it. This is shown by the statement of counsel for defendant that, "If the submission is limited to that purpose I have no objection." Plaintiff claims that it was so limited but whether it was or not is immaterial for the reason that if the exhibit was admissible for any purpose, the court did not err in admitting it, defendant, in effect, having admitted that it was admissible for the purposes that we have indicated.

"The rule as to the admissibility of evidence under circumstances as present in this case is stated by Wigmore as follows:

" 'It constantly happens that a fact which is inadmissible for one purpose is admissible for other purposes; while, on the other hand, a fact which is entirely admissible, so far as some rules are concerned, is excluded because it fails to satisfy some other rule.

" 'In other words, when an evidentiary fact is offered for one purpose, and becomes admissible by satisfying all the rules applicable to it in that capacity, it is not inadmissible because it does not satisfy the rules applicable to it in some other capacity and because the jury might improperly consider it in the latter capacity. . . .

" 'Here the only question can be what the proper means are for avoiding the risk of misusing the evidence. It is uniformly conceded that the instruction of the court suffices for that purpose; and the better opinion is that the opponent of the evidence must ask for that instruction; otherwise, he may be supposed to have waived it as

unnecessary for his protection.' " [Knox v. M. K. & T. R. R. Co., 199 Mo. App. 64, 68, 69.]

If the court properly limits the testimony at the time it is introduced, then it is unnecessary to give a limiting instruction to the jury. [Courter v. Geo. W. Chase & Son Mercantile Co., No. 15454, decided by this court but not yet reported.] No instruction was asked by the defendant limiting the effect of the admission of the exhibit, therefore, if the court did not as a matter of fact limit it at the time it was introduced in evidence, defendant is in no position to complain. It is now claimed that the exhibit was not in fact an exact duplicate of the original certificate of registry furnished defendant but in view of the statement of counsel for defendant at the trial that he did not object to the admission of the so-called duplicate if limited to the purposes mentioned, defendant is not in a position to raise any point in reference to this matter.

Exhibit No. 1 does not mention plaintiff as the owner of the hog but designates the owner as "Pleasant Hill Farm" from September 1, 1920, to October 11, 1920, when it was sold to the defendant. After the exhibit was admitted plaintiff testified that he "had all my hogs recorded to Pleasant Hill Farm" and that Pleasant Hill Farm meant plaintiff and could have meant no one else. Defendant then asked him. "Q. Just a minute—you say no one else has an interest in the farm—in the real estate? A. None at all." Objection was then made to the testimony because "the record in reference to the real estate would be the best evidence as to who has any interest." No objection at this time was made because the witness was attempting to use the certificate of registry as evidence of his title, but merely that the plaintiff could not show his title to the farm by parol testimony. There was no merit in this objection. Title to the property was not in issue but was only collaterally involved and the court did not err in permitting plaintiff to show his ownership by parol testimony. [Levelsmeier v. Ry., 144 Mo. App. 421; Morgan v. Lumber Co., 105 Mo. App. 239; In re Mingo Drainage District, 267 Mo. 268, 281; 22 C. J. 994.]

On cross-examination plaintiff was asked what announcement was made by Mr. Moore at the sale. So on redirect examination he was asked by his counsel in that connection, "Q. Will you kindly state what took place between you and Mr. Moore relative to his coming to you and what you told him?" It was brought out that the conversation in question occurred about three days before the sale and consequently an objection was made to this question, which was overruled. Plaintiff then testified in reference to a conversation had with Mr. Moore at Des Moines, Iowa, about three days before the sale in which Moore said that he was going to have an auction sale at Kansas City of high-bred animals and wanted to make a high average

and asked plaintiff to put some of his best stock in the sale, mentioning "Western Honor" and "Black Lil II;" that he told Moore that he could take Black Lil II down but not Western Honor and that "I have others at home that I would take down to the sale to be sold at his sale. That was the arrangement I had with Mr. Moore in bringing this hog to Kansas City." The court in permitting this testimony stated—"I think it is relevant upon the question upon what announcement Moore made" at the sale. It is now strenuously contended that the testimony was not admissible for this purpose but we need not pass upon the question as to whether the testimony was admissible as throwing light upon the likelihood of Moore having made the statement at the sale attributed to him by the defendant for, as before stated, the question of estoppel is not now in the case and if it was improperly admitted for the purpose indicated by the court, the matter is not now material.

It is, however, contended, incidentally, that the testimony was prejudicial because not competent as tending to show ownership of the hog. It is very doubtful if the objection made at the time was broad enough to cover this objection now made, as the objection at the trial seemed to be based on the theory that the evidence was not material as going to show "as to what was said at the sale." However, it does not appear that the testimony was admitted for the purpose of showing ownership on the part of plaintiff but merely because of defendant's claim of estoppel. At any rate, we do not think that it is materially erroneous even if it be conceded that it had a bearing upon the ownership of the hog. In this connection it was, in effect, merely a statement of plaintiff that he told Moore three days before the sale that he was the owner of the hog. He testified unequivocally at the trial that he was its owner and the fact that he testified that he made the same statement to another party prior to the trial would not add in a material way to anything that he said at the trial. We are prohibited from reversing a case for immaterial errors. [Section 1513, R. S. 1919.]

Complaint is made that the court erred in permitting plaintiff to state his opinion as to the value of the animal in question and to give his opinion as to the value and sale price of various other hogs as a basis for determining the value of the hog in question. This testimony all related to the question of estoppel pleaded in defendant's answer and as that defense is now out of the case, it is unnecessary for us to notice these matters.

It is claimed that the court erred in refusing to permit defendant to offer in evidence excerpts from the Poland China Journal, the official publication of the Poland China Association, tending to show that the hog in question was registered at the Nebraska State Fair

in September, 1920, and the Sedalia State Fair in the name of Meyer Brothers. It is claimed that this testimony was admissible as "corroborating circumstances causing and inducing the defendant to act under the reasonable belief that he was dealing in the purchase of Black Lil II with Meyer Brothers as the owner of said hog." At the trial plaintiff stated that he was offering these excerpts from the Poland China Journal for the purpose of "showing the ownership and the listing" of the hog at the Sedalia and Nebraska State Fairs. At the time these excerpts were offered there was no showing as to who obtained the information upon which the publication was based and no showing that defendant had seen them in the paper before he purchased the hog in question or at any other time. Afterwards defendant testified that he was present at the Sedalia State Fair and examined the listings of the animals at that fair and that customarily either he or "a representative of the paper" would obtain news items for it and that he was at the time of the trial "fairly" familiar with the records of the paper; that he was familiar with the records of the Iowa State Fair held shortly before he purchased the animal and that as to that fair the publication listed the ownership of Black Lil II as "Pleasant Hill Farm." The excerpts from the newspaper were never again offered in evidence. When they were offered there was no showing that defendant had any personal knowledge of the correctness, or even the presence, of these items appearing in the Poland China Journal and the mere fact that they stated that Meyer Brothers did own the hog at the time in question, of course, was not competent evidence of that fact. It will thus be seen that the evidence sought to be admitted was not competent even for the purpose that defendant now says it was, but as the question of estoppel is not now in the case, there is nothing in the claim now made by defendant in any event. Of course, they were not admissible for the purpose of showing ownership of the hog.

It is claimed that the court erred in refusing to allow defendant to testify that he purchased the hog for and on behalf of the Poland China Journal. We do not know that defendant would have so testified for no offer of proof was made but in any event the testimony at the time it was offered was not competent because the answer at that time admitted that defendant himself purchased the hog. It is true that plaintiff's Instruction B submits to the jury the question as to whether defendant purchased the hog individually, stating that if he did he could not set off "any indebtedness existing on the part of Meyer Brothers to a partnership of which defendant was a member" and that if defendant purchased the hog individually, the jury should "disregard all the testimony concerning the existence of any indebtedness on the part of Meyer Brothers to the Poland China Journal." It was not necessary for plaintiff to offer this instruction

for the reason that there was no issue in the case in reference to the matter, in view of the fact that the testimony was undisputed that defendant did purchase the hog in question individually. But the submission of the matter to the jury was in defendant's favor, therefore, there was no error in the giving of the instruction as, evidently, it could not have misled the jury in any manner.

It is insisted that the court erred in failing to give defendant's instruction in the nature of a demurrer to the evidence. In this connection it is argued that defendant had a right to contract with anyone he pleased and that even though plaintiff were the owner of the hog, that defendant having made a mistake, thinking he was buying the hog from Meyer Brothers, there was no meeting of minds and therefore no contract and plaintiff is not entitled to recover; that the burden was upon plaintiff to prove that "defendant did know or had reason to believe that he was contracting with H. E. Esty before it can be said that any contract could possibly develop as between plaintiff and the defendant; that the evidence is uncontradicted that defendant did not know, had never seen or heard of plaintiff or the Pleasant Hill Farm until after the sale was made; that the right of defendant to select the party with whom he desired to contract, is particularly important in this instance because the pure-bred animal business is based upon the honor of the man in it and the man responsible for the "guaranty" of the animal purchased; that one "might be willing to buy a hog from one party and entirely unwilling to accept the guaranty of another."

Of course, the jury were not required to accept the *ipsa dixit* of defendant that he intended to buy the hog from Meyer Brothers. If that were the law, anyone could escape the burden of a contract properly and legally entered into by himself by merely saying that he did not intend to contract with the other party. It may be admitted that defendant had a right to choose from whom he would buy the hog and he had a right to refuse to buy it if it was not owned by Meyer Brothers, but we think there was evidence from which the jury could say that defendant did not care to exercise this right in buying the hog in question but was willing to purchase it from anyone who might own it. In considering the question of the propriety of a demurrer to the evidence, of course, the testimony must be taken in its most favorable light to plaintiff. According to plaintiff's testimony there was no announcement as to the ownership of the hog at the time it was sold. Defendant did not testify that he was deceived by the fact that the hog had been shown at Sedalia as that of Meyer Brothers. In fact, his answer pleads positively that he purchased the hog relying upon the announcement made at the sale prior to his purchase. So the question, in its last analysis, is

whether defendant was deceived as to the true ownership of the hog by the announcement made at the sale. There being evidence that there was no announcement made as to the ownership of the hog, the inference naturally follows that defendant was not interested as to with whom he was contracting but was willing to buy the hog from anyone who owned it. The demurrer to the evidence was therefore properly overruled.

It is insisted that the court erred in giving instruction "A" as requested by plaintiff. Plaintiff's instructions A and B were the only ones offered by him. As already stated, there was no error in the giving of plaintiff's Instruction B. Instruction A was offered on the question of estoppel, stating to the jury that plaintiff must have heard the announcement that Meyer Brothers was the owner of the hog, if such announcement was made, before there could be any estoppel. As there is no estoppel now involved, if the instruction was erroneous upon the question which it purports to cover, the error is immaterial. The same may be said of the refusal of defendant's instruction No. 5 as it was, likewise, based upon the defense of estoppel. It is claimed that the verdict is against the weight of the evidence but that question was one for the jury and the trial court and not for this court. [Abernathy v. Mo. Pac. R. R. Co., 217 S. W. 568.]

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.

## On Rehearing.

ARNOLD, J.—Defendant, in his motion for rehearing and in his brief in support thereof, among other things, insists he should have been granted a new trial because the court erroneously admitted in evidence a conversation between plaintiff and Moore, not in the presence of defendant, which occurred at Des Moines, Iowa, three days before the auction sale and purchase of the hog in question. Relative to this circumstance, plaintiff was asked on redirect examination:

"Q. Will you kindly state what took place between you and Moore relative to his coming to you and what you told him?"

It was then developed that the conversation occurred about three days before the sale. Thereupon objection was made and overruled. Plaintiff then proceeded to testify that in conversation Moore stated he was going to have an auction sale of high-bred animals and wanted to make a high average, and asked plaintiff to put some of his best stock in the sale, especially mentioning "Western Honor" and "Black Lil II," the latter being the hog involved herein; that he told Mr. Moore that he could take Black Lil II down but not Western Honor, and said:

"I have others at home that I would take down to the sale to be sold at the sale. That was the arrangement I had with Mr. Moore in bringing this hog to Kansas City."

In admitting this evidence the court stated, "I think it is relevant on what announcement Moore made at the sale." Defendant strenuously insisted, and now insists, that the testimony was not admissible for that purpose.

We properly held in the original opinion that it was not necessary for us to pass upon the question of the admissibility of that evidence for the purpose of showing the likelihood of Moore having made the statement attributed to him at the sale; because that statement went to the question of estoppel which we find is not in the case, and if, in fact, the testimony was properly admitted for the purpose assigned, it is not now material. We still adhere to this ruling. We also adhere to our ruling that it does not appear that the testimony was admitted for the purpose of showing ownership of the hog in plaintiff, but merely because defendant claimed estoppel.

But there is another element in the case upon which the testimony has a direct bearing, to-wit, with whom defendant desired to contract for the hog. This question was preserved in the motion for a new trial and argued in defendant's brief and also in the motion for rehearing. It will not be disputed, we take it, that defendant has the right to select the party with whom he desired to contract. The rule just stated is of general application; but if it is questioned, the following citations may be read with profit: Baker v. Keown, 67 Ill. App. 433; Boston Ice Co. v. Potter, 123 Mass. 28; Loeffel v. Pohlman, 47 Mo. App. 574, 586; Lansden et al. v. McCarthy, 45 Mo. 106. A question in the case is as to whom the defendant believed the seller or owner of the hog to be; therefore, what Moore said at the sale is a very important matter and the testimony complained of had a direct bearing thereon. Any conversation between plaintiff and Moore when defendant was not present could not be binding upon defendant. For the reasons just stated, we hold the evidence was incompetent and the court erred in admitting it and in overruling the motion for a new trial. The judgment is reversed and the cause remanded for a new trial. Bland, J., concurs; Trimble, P. J., absent.